Yes, Your Honor. Jeffrey Baird. Good morning. I'm representing Mr. Israel. This has a very complex set of briefs, but this is actually a very ordinary disability case. The physicians who saw the plaintiff, the claimant, found him markedly impaired in a number of ways, and they based their opinions on personal observations, mental status examinations, interviews, and the visceral feelings or subjective assessments they made based on their interaction with him personally. Dr. Mangione Lamby gave the best evidence of record. It concerns the period at issue directly. She observed hopeless mood, constricted affect, impaired insight. She found him to be agitated, sad, and tearful. She took a long history with him, apparently, writing things down. She made subjective assessments, she made objective findings, and she gave us an opinion that he's markedly impaired in the ability to sustain ordinary work routines and markedly impaired in working in and around others. Under Social Security ruling 8515, that would render him disabled. The ALJ rejected Dr. Mangione Lamby's opinion on grounds that it was over-reliant on subjective reporting and that it wasn't backed with any objective evidence. But on the contrary, on the mental status exam, she saw tearfulness, sadness, constricted affect, poor insight, limited judgment, and she also made subjective assessments. That has to be given weight as well under Lester v. Chater. But what is constricted affect? It would be the physical presentation. It must be the difficulty expressing himself, difficulty accessing his emotions. Affect is sort of your way of being at the moment. Mood is that spread out over time. So constricted is hesitant, limited in speaking. Anyway, it's a clinical finding, it shows an impairment. She's a doctor, she made it, she saw him in person. Under the weighting system used in Social Security and under Lester v. Chater by this court, her opinion had the most inherent weight of any opinion of record. It was supported longitudinally by some evidence earlier than the period at issue, and that was Dr. McRae. He established a longitudinal perspective of this degree of impairment, and he also established that the medications were only partially effective. Even on medications, the claimant still had marked impairment in sustaining work around others, marked impairment in sustaining ordinary work routines. So that is the heaviest evidence. The later clinical evidence from the Comprehensive Mental Health also shows these continued problems of depressed mood, strange thoughts that other people are thinking about him or fear that he's being followed that may go to paranoia or the depressed mood or depression that had been found by Dr. Manjani Bambi. The ALJ preferred and relied on a reviewing physician, a physician that did not see the claimant. That was Dr. Harrison, and she went over the record evidence, not all of it because she didn't see the later evidence from the Comprehensive Mental Health from later 2008-2009, which continued to support Dr. Manjani Bambi. But she found a number of moderate limitations and then gave a narrative assessment, and much of the briefing deals with that problem. I would urge, first off, her opinion has inherently less weight. Dr. Harrison's opinion. Right. It has inherently less weight under the weighting system of this court and in the regulations. The doctors who saw Mr. Israel were the ones who were able to give the best opinion evidence, and their assessments of him were both objective and subjective, and the subjective is entitled to weight under Lester v. Shader. They also were able to give him credibility, at least to the extent of his presentation to them, and that's Ryan v. Astrew outlined in the briefing. Regarding the- What do you think they said about giving him credibility? I don't remember that in the reports. No. The argument I'm making is that they believed him. That is, when they took his history, when they observed him in mental status, when they interviewed him, they wrote down things they believed. So we, as the people relying on those medical reports, can believe them believing him. That's Ryan v. Astrew. That's the main thing. There's an effort to discredit this strange and troubled man, based on whether he lives at the mission or lives in the woods. It looks in the records from Comprehensive Mental Health, it's kind of both. He goes to the mission to bathe and eat. He stays there sometimes, but it makes him uncomfortable to be around others, so he sleeps in the woods on the Puyallup River. That doesn't seem to be a contradiction at all as you look through the records. Dr. Harrison's MRFC, the Part 1 versus the Part 3, was, I thought, going to be the most important thing, but it seems to me to be a side issue. If you want to address it, under 416.927, the ALJ is obligated to read each opinion from start to finish, and opinion evidence from the state agency physicians are just like any other opinion, except they're assigned less weight because the doctor hasn't actually seen the claimant. So, if there are any questions, I'll answer them. I would say that this Part 1, Part 3 is a side issue because you think that there isn't substantial evidence in the record to support the conclusion? To support the ALJ's RFC assessment and conclusions. So, if you're right, if we agree with you on that, we don't have to deal with Part 1 and Part 3. Right. But otherwise? Well, otherwise, if you believe that Dr. Harrison is a good enough doctor to compare against the others, then what she said is embodied in the totality of this document with a peculiar format of some check boxes and some narrative. Under the regulations, it is flat out the ALJ's duty to review each opinion start to finish, assess that opinion as a whole, the state agency just like any other opinion, except it's assigned less weight because the doctor hasn't had a personal interaction. Okay. I'll reserve rebuttal time unless there's questions. You can reserve rebuttal. Thank you. Thanks. We'll hear from the appellee. And for the government, we have Mr. Hill. Mr. Hill has found the button for the tall hat. Thank you, Your Honors. May it please the Court, Gerald Hill for the commissioner. Here, the ALJ's residual functional capacity assessment was supported by substantial evidence in the form of Dr. Harrison's opinion, which itself was supported and consistent with counseling records from comprehensive mental health that the examining psychologist, Dr. McCray and Dr. Mangione-Lamby, had no opportunity to consider. Under this Court's ruling in the Tonopetrin case and under SSR 96-6P, Dr. Harrison's report is substantial evidence. It's sufficient to support the RFC assessment and for the ALJ to reject the contradicted reports and opinions from the examining psychologists. The ALJ complied with SSR 96-8P by conducting and making his residual functional capacity assessment based on his evaluation of the evidence. So we are supposed to look to see whether the conclusion is supported by substantial medical evidence, even though there's other evidence that would make it appear that the applicant is a basket case. The Court's function is to determine whether the ALJ's assessment is supported by substantial evidence and not simply medical evidence, but all the evidence in the file. Some of it will be medical evidence, some of it may not be in a given case, but yes. But isn't there, at least under the Ninth Circuit case law as I read it, there's this hierarchy of doctors and we're supposed to give more weight to treating physicians, examining physicians, than we are to somebody like Dr. Harrison? Well, unless the ALJ provides adequate reason supported by substantial evidence to give more weight, it's a general scheme that's reflected in the Ninth Circuit's opinions and also in the defendant's regulations and rulings. So the applicable ruling here, SSR 96-6P, allows the ALJ in an appropriate circumstance, as in this case, to give more weight to the non-examining physician's opinion. And we cite, as I said, the Tonopetchen case. As long as there are good reasons to discount. The conflict in the evidence and the support of independent evidence that was not considered by the examining psychologist renders the non-examining psychologist's opinion substantial evidence. What's the conflict? You know, other than whether he sleeps in the mission or the woods, what are the other conflicts? Well, the conflict in the evidence is the differing opinions about the severity of his functional limitations. So Dr. Harrison has a different opinion about the severity of his functional limitations caused by the mental impairments than, for instance, Dr. Mangione-Lamby and Dr. McRae. So that's the conflict that I'm talking about. Okay. Then was there other evidence apart from that conflict that's important? Well, the primary evidence is the counting records from comprehensive mental health services, which undermine some of the basis for the examining psychologist's opinions. So the ALJ found that the examining psychologist relied in large part for their opinions on the claimant's subjective reporting. But isn't that true? I mean, don't most psychologists and psychiatrists rely on the self-reporting of the patient? I mean, what else is there? Yes, but if they do, well, there is the self-reporting and there's testing, there's observations and the mental status examination. So Dr. Mangione-Lamby administered a mental status examination and took a history by interview from Mr. Israel. She wrote in her report that Mr. Israel performed adequately on the mental status examination, so it was reasonable for the ALJ to assume that her assessment of his functioning and his history came from Mr. Israel, whom the ALJ found not credible. And here Mr. Israel does not challenge that finding. Not credible in what sense? Not as credible as he talks to his doctors and they rely on some of what he says. That's a different level or a different context in which you rely on what Mr. Israel says than you are as a judge listening to testimony in a courtroom. Yes, well, Mr. Israel told his doctors that he avoided people and he isolated socially. When we look at the counseling records, we see that he was with friends. He blamed his friends for his dirty UAs. He lived with his ex for a while. He visited casinos to gamble. He used public transportation as references to library use and computer use. So part of the basis for Dr. Mangione-Lamby's and Dr. McCrae's opinions is that the claimant isolates and cannot tolerate being around people. So the comprehensive mental health counseling records undermine those findings. So even if we discount this business about whether he slept in the park or wherever he slept and all of that, and you're now citing for us objective evidence that undermines what he told his treating or examining doctors. Yes, yes. Dr. Mangione-Lamby's report contains conflicting references about where he lived, and I think it was reasonable for the ALJ to find that there was a misrepresentation. But even if it wasn't, his overall finding that the doctor's opinion is based on the claimant's reporting, which the ALJ found to be incredible, is supported by substantial evidence. Is the fact that he goes to casinos, does that really undercut that he doesn't like to be around people at work? Well, it undercuts any opinion that he couldn't tolerate being around people enough, or as much as the ALJ determined in the residual functional capacity assessment, because the ALJ found that he does have a limited ability to be around people. He can't work extensively with the public, but he can tolerate superficial contact, I guess, and that's not the ALJ's words, but he can withstand contact with other persons to a degree that he can do work that doesn't involve interaction with the public or children. So it's not a complete prohibition, and it was reasonable for the ALJ to find, based on the activities that are evidenced in the comprehensive mental health notes, that Mr. Israel could tolerate that amount of contact. What were the jobs that the vocational expert on his side said that he couldn't do? That he could not do? What did the government, what did the VE say he could do that the ALJ relied on? The VE said he could perform the jobs of night janitor and bench assembler. A cleaner. Night cleaner, thank you. Dishwashers. I don't recall a dishwasher. Tube dispatcher was one I recall. Sounds like it involves loading and unloading pneumatic tubes. But I think the main ones with significant numbers are going to be night cleaner and bench assembler. There's a fourth one that doesn't come to mind at the moment. Do we have any Ninth Circuit cases that specifically address the extent to which doctors doing a mental health assessment can assess the credibility for their purposes of what's said by a guy who's got a record that would make him not very credible in a courtroom context? Beg your pardon, could you rephrase the question? I'm not sure I understand it. Are there any Ninth Circuit cases that specifically address what's the province of mental health doctors in assessing credibility of a person for their purposes, even when the person maybe has done crimes or drugs that would make them not credible testifying in a court? We have a body of case law that allows an ALJ to reject a doctor's opinion where the ALJ has found the claimant not credible and the doctor has relied on the claimant's opinions. I don't know if your question is asking for those cases. I'm sort of asking on the other side. Okay, so I think the Ryan case. saying that the mental health doctor's assessment should be given primacy. The Ryan case that's cited by Mr. Israel seems to say that to me it's not a clear and convincing reason to reject a doctor's opinion for the basis that I just described where the ALJ has found the claimant not credible in the circumstances where the doctor himself has not found the ALJ or has not found the claimant to be incredible. In other words, where the doctor believed the claimant. I have addressed that case in my brief. That's a perplexing case to me because the ALJ is the final arbiter of the medical evidence  and that case seems to conflict with prior case law that I just described that would hold that an ALJ may reject a claimant's or a doctor's testimony where the doctor relied in large part on the claimant's subjective self-reports. So the Ryan case seems to be an outlier to me and I can't really reconcile it with prior cases from the court, but I will say that it involved uncontradicted evidence and the court's application of the clear and convincing reason standard. Here we have contradictory medical opinions and we're under the specific and legitimate reasons standard that comes from the court's precedent. So that would be a basis on which I would distinguish the Ryan case. Very interesting. Okay, thank you. I want to address one point about the ALJ's residual functional capacity assessment. The ALJ found that the claimant had the ability to perform simple and detailed tasks and I would concede that is a little bit in conflict with Dr. Harrison's opinion. She said that the claimant should not perform complex tasks on a sustained, consistent basis. But as I noted, all the jobs identified by the vocational expert and the ALJ are unskilled jobs with a specific vocational preparation of two from the Dictionary of Occupational Titles and under SSR004P, and that is those are presumed to be simple jobs, presumed to be unskilled work, I should say. By regulation, unskilled work involves simple duties requiring little or no judgment that can be learned in a short period of time, less than 30 days. So the ALJ's inclusion of the ability to perform detailed tasks on a consistent basis would be harmless because all the jobs were unskilled. Finally, if the court is entertaining a remand for a finding of disability based on crediting evidence as true, which I hope is not the case, but if it is, there is a fairly recent Ninth Circuit decision that touches on this issue. It's not squarely on point, but the case is Molina v. Astru, 674F3-1104, specifically at 1118 to 1119. The court suggests that crediting certain evidence as true may violate Supreme Court precedent that errors are not presumed to be prejudicial. So if the court is entertaining that, invite the court to ask for further briefing, although I think the court should affirm a remand should be for further proceedings rather than for a finding of disability. So the commissioner asks the court to affirm the ALJ's decision. If there are no further questions, I'll rest. Any questions? I don't think so. I think we've got your argument, and we'll take a look at the case you mentioned. Just a short rebuttal. Okay, you can lower that stand. Oh, sorry about that. If you want. Wrong way. Yeah, you've got to be able to see me. Now I can see. All right, much better. The Tonya Pettyen case had mental issues at stake, and this court remanded. Having found Tonya Pettyen not credible regarding his physical impairments, the court nonetheless remanded for further investigation of the mental impairments because the court was hesitant to so easily undermine the psychiatrist's opinions based on the plaintiff's non-credibility in his physical world, his physical statements. So Tonya Pettyen would stand for the very proposition you're seeking. If there's a mental impairment and credibility questions remain, those are special. The credibility questions regarding a mentally impaired person are special, and Tonya Pettyen required remand. In Lester, the stronger, more general proposition is, once again, subjective judgments of the physician are to be accorded weight. The ALJ is not to assume that the doctors routinely lie for their claimants or that they're saps or somehow conjured by con men. I would think, actually, this court could take judicial notice. It must be pretty hard to confound a psychologist or psychiatrist who's really dedicated to looking for that. In fact, it might be a symptom. I doubt we can take judicial notice of that proposition under judicial notice law, but I understand your argument. Dr. Harrison, of course, as the government concedes, did not support the RFC assessment. She was much more concerned, hesitant. She said delusions were possible, and that was certainly what was found on the mental status examination, actually, by Dr. Mangione-Lamby. And Dr. Harrison felt there was moderate impairment in this ability to sustain ordinary work days and work weeks without interruptions from psychological symptoms. But what's your position if the court were to decide to remand on the scope of the remand with reference to the argument that the government presented? Remand would serve no useful purpose. The record's fully developed. We have the evidence from the comprehensive mental health services. It continues to show the problems, even with treatment, that Dr. Mangione-Lamb found. So the relevant authority would be Beneke, which says if the record's fully developed and if the misapprised physician's evidence is credited as true and disability results, then a finding of disability is warranted. The Strauss case from a couple of years ago reestablished or restrengthened that Beneke test. It's also called the Smolin test or the Harmon test. It's a three-part test. If the record's fully developed, if the physician's credit is true, disability is established, then credit is true to save time and disability is established. So Strauss explains why that test is important and when it leads to a decision of disabled and when it doesn't. Here it should, because Dr. Mangione has the best evidence of record confirmed in the later, especially the later, comprehensive mental health evidence. If there's no more questions, I'll rest. I don't hear any. Thank you. I think the case is very well argued on both sides. And the case of Israel versus Astrup is submitted. And we thank both counsel for their excellent arguments. Thank you.
judges: Friedman, Schroeder, Gould